IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:12cr145-MHT |
| EDWARD CHARLES HICKS | ) | (WO) |

OPINION

Defendant Edward Charles Hicks pled guilty to one count of theft of a firearm from a federal firearms licensee in violation of 18 U.S.C. § 922(u) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, he requested a downward 'variance' from the 33-to-41 month range of custody calculated pursuant to the United States Sentencing Guidelines. This court granted a three-level variance from the guidelines and sentenced Hicks to 24 months on each count to be served concurrently. While the court orally gave its reasons for the variance at the sentencing hearing, this opinion sets forth its reasons in more detail.

## I. BACKGROUND

On March 23, 2012, a surveillance video in Gulf States Distributors in Montgomery, Alabama captured the image of a tall, slender man removing a Glock Model 22, .40 caliber semi-automatic handgun from a display table; hiding it in his pants; and walking out of the store. That man was Hicks, and, once shown the incriminating surveillance tape, he confessed to stealing the gun and pled guilty to the two offenses of theft of a firearm and being a felon in possession of a firearm.

Hicks came before this court for sentencing. The presentence-investigation report prepared by the U.S. Probation Office revealed that he has a laundry list of prior convictions, many of them for petty theft and shoplifting. In a cycle dating back to his first conviction in 1973, Hicks served short sentences in jail and then committed new crimes almost immediately upon

release. He was, as he himself described it at the sentencing hearing, in "a revolving door."

This pattern of criminal activity has context: Hicks had been severely addicted to alcohol since he was 20-years old. He explained that alcohol was deeply connected to his crimes: "[E]very []time I was arrested, I had taken a drink first." In 2005, Hicks began his most successful stretch of sobriety and staved off his desire for alcohol for over six years. However, as he tamped down his addiction to alcohol, a new addiction to gambling emerged.[1] Hicks rapidly burned through his

---

1. Hicks's defense counsel suggested that one addiction was traded hydraulically for the other; Hicks simply moved "from one addiction to the next." The connection between substance and gambling addiction has been well documented. See, e.g., Bradley S. Fiorito, "Calling a Lemon a Lemon: Regulating Electronic Gambling Machines T o Contain Pathological Gambling," 100 Nw. U. L. Rev. 1325, 1336 (2006) (noting the "meaningful similarities" between gambling and substance addiction "in terms of their psychological, biological, and social effects."); Henry R. Lesieur, "Costs and Treatment of Pathological Gambling," 556 Annals of the Am. Acad. of Pol. & Soc. Sci. 153, 158 (1998) (citing studies finding a connection between pathological gambling and substance abuse).

assets at the casino, even cashing in a $ 10,000 certificate of deposit.

In the early morning on March 23, 2010, Hicks finished working a night shift and went straight to the casino, arriving at around 5:00. Within two hours, he had lost all of his money. He had also succumbed to his alcohol addiction and had become intoxicated. Hicks then spotted Gulf States Distributors and wandered in, believing that it was a loan company where he could get help to pay his bills. He entered the store and the gun caught his eye. He imagined he could sell the gun and get some quick cash. He took the gun and walked out of the store. Hicks then sold the gun for $ 200, after which, he returned immediately to the casino and lost this profit as well.

According to the presentence report prepared by the Probation Office, Hicks had a total offense level of 13 and a criminal-history category of VI. His Sentencing Guidelines range was therefore, as stated, 33-to-41

months.  Hicks, however, requested a variance from this range.  He based his request on a number of grounds, including his health, his age, and events from his childhood.  The court granted a three-level variance for a different reason: while Hicks did steal the gun, he did not steal it in order to keep or possess it or use it as a weapon, but rather to exchange it for money, which was desperately needed so that he could fuel his addictions.  Hicks was sentenced to 24 months on each count to be served concurrently.  In addition, in order to ensure that Hicks's alcohol and gambling addictions are properly treated, the court ordered that he participate in alcohol and gambling treatment and counseling and wear an alcohol-monitoring device as conditions of his supervised release.

## II. DISCUSSION

District courts are no longer required mechanically to apply the Sentencing Guidelines after <u>United States v.</u>

Booker, 543 U.S. 220 (2005). However, courts still must consult the Guidelines and take them into account at sentencing. See United States v. Crawford, 407 F.3d 1178 (11th Cir. 2005). This consideration requires the court to calculate the Guidelines range just as it would have before Booker. Id. at 1179. Having done so, "the district court may impose a more severe or more lenient sentence as long as the sentence is reasonable." Id. The court must evaluate the reasonableness of a sentence in light of the factors set forth in 18 U.S.C. § 3553(a). These factors include, among others, "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed" to "reflect the seriousness of the offense, to promote respect for the law, ... to afford adequate deterrence," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1) & (2). In addition, the court must consider any pertinent policy statements from the Sentencing

Commission when deciding whether to vary from the Guidelines. See United States v. Irey, 612 F.3d 1160, 1218 (11th Cir. 2010).

In this case, the court found that Hicks's offense level was 13 and his criminal-history category was VI. He therefore had a guidelines range of 33-to-41 months. Considering the factors identified under § 3553(a), the court concluded that a sentence within this range would be greater than necessary.

Congress has criminalized the possession of firearms by convicted felons because these individuals were categorically deemed to "pose serious risks of ... danger to the community." United States v. Dillard, 214 F.3d 88, 95 (2d Cir. 2000) (describing the legislative history of the felon-in-possession provision) (internal quotations and citations omitted). Senator Long, who sponsored the predecessor to the contemporary felon-in-possession statute, explained that the prohibition was warranted because "convicted felons" are "persons who, by

7

their actions, have demonstrated that ... they may not be trusted to possess a firearm without becoming a threat to society." Id. at 96 (internal quotations and citations omitted).

While Hicks has indeed violated the felon-in-possession provision, his action was not in the heartland of those the law was designed to punish and deter. Although he took the gun, he did not take it because of its value as a gun; instead, he took the gun purely for its monetary value.[2] Indeed, Hicks possessed the gun for only a matter of hours before he sold it. His brief possession of it, therefore, did not pose a threat to society in the same way as a person who possesses a gun for its value as a weapon. Therefore, this case does not present the same need "to protect the public" from the

---

2. This is consistent with Hicks's prior record of criminal conduct. Hicks has minimal or no history of using firearms. (He did have one conviction in 1990 for threatening to kill a man with a gun. However, it is unclear from the presentence-investigation report whether he actually had a gun at the time.) He does, however, have a litany of convictions for theft.

defendant and is also arguably less serious than other felon-in-possession cases. § 3553(a)(1) & (2); cf. United States v. Griffin, No. 2:10cr48-MHT, 2010 WL 3769383 at *3 (M.D. Ala. 2010) (Thompson, J.) (finding a mitigating circumstance for sentencing under § 922(g) where the defendant "took and possessed a rifle for purposes of protection, rather than having a small gun which could have been used for criminal purposes.").

A similar logic is suggested by the reduction in the base-offense level where the defendant possessed a firearm "solely for lawful sporting purposes or collection." USSG § 2K2.1(b)(2). This provision, when applied, shrinks the base-offense level in a case like this one from 14 (the base-offense level in Hicks's case) to six. It is clear that Hicks does not qualify for this reduction; the Eleventh Circuit has expressly concluded that § 2K2.1(b)(2) does not apply to a defendant who possesses a firearm "for the sole purpose of pawning" it. United States v. Caldwell, 431 F.3d 795, 796 (11th Cir.

9

2005). However, the existence of this reduction reflects that possession of a firearm, while still illegal, can call for a different degree of punishment in certain contexts. Even though Hicks cannot benefit from the dramatic eight-level reduction he would have received if § 2K2.1(b)(2) applied to his case, the court finds that the specific context in which Hicks possessed the firearm in this case calls for the three-level variance that the court granted.

A second reason for variance also exists in this case. Hicks's need for cash (which led to his theft of the gun) was driven by addiction to gambling (which was itself associated with his addiction to alcohol), not greed, and his addiction, though closely related to the act of theft, was wholly unrelated to the gun <u>as a weapon</u>. <u>See, e.g.</u>, <u>United States v. Newhouse</u>, No. CR11-3030-MWB, 2013 WL 346432 at *26 (N.D. Iowa Jan. 30, 2013) (Bennett, J.) (varying from the guidelines because, among other reasons, the defendant "did not commit her

crime out of greed ... but to feed her chronic drug addiction."); United States v. Person, No. 06-CR-140, 2007 WL 984086, at * 3 (E.D. Wis. Mar. 27, 2007) (Adelman, J.) (varying from the guidelines range where, among other factors, "the defendant's involvement [in the offense] stemmed from his own addiction, not from greed."). In such circumstances, intensive treatment is more likely than lengthy incarceration to protect the public from future offenses by the afflicted individual. "[A]ddiction propels ... criminal behavior." Charles J. Hynes, Better Than Prison A Prosecutor's Collaborative Models for Reducing Criminal Recidivism, Hum. Rts., Spring 2009, at 16. "For those addicted to controlled substances, simply being addicted to an illegal drug often induces the addict to engage in criminal activity in order to obtain the substance for personal use." Ethan G. Kalett, Twelve Steps, You're Out (of Prison): An Evaluation of "Anonymous Programs" As Alternative Sentences, 48 Hastings L.J. 129, 138 (1996). However,

"while traditional parole/probation has failed to decrease recidivism in addicted offenders, placing such offenders in drug and alcohol treatment programs does decrease recidivism." Id. at 139; see also United States v. Bannister, 786 F. Supp. 2d 617, 658 (E.D.N.Y. 2011) ("Except for the incapacitation effect of incarceration, there is little apparent correlation between recidivism and the length of imprisonment."). This, of course, makes sense: where crime is fueled by addiction, the addiction "sticks deeper, grows with more pernicious root" than the crime itself. William Shakespeare, The Tragedy of Macbeth, Act VI, Sc. 3. Therefore, treating the addiction is a more effective way to halt the criminal activity than harshly punishing the crime without regard to its broader context. A slightly shorter sentence in this case, followed by treatment for alcohol and gambling addictions and the watchful eye of an alcohol-monitoring device, is more likely to prevent

12

Hicks from committing further crimes and thus better serve the public interest in safety.

In conclusion, for the above reasons, the court believed that the sentence that Hicks received met all the requirements of 18 U.S.C. § 3553(a) and was reasonable.

DONE, this the 20th day of February, 2013.

                         /s/ Myron H. Thompson
                         UNITED STATES DISTRICT JUDGE